# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02102-SCT

*WAYNE E. FERRELL, JR. d/b/a FERRELL-*
*HUBBARD INVESTMENTS*

**v.**

*RIVER CITY ROOFING, INC., AND LARRY*
*MONTPELIER, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2003 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE FERRELL, JR. |
| | ADRIENNE PAGE PARKER |
| ATTORNEYS FOR APPELLEES: | J. WADE SWEAT |
| | CHARLES G. COPELAND |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 08/18/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.

## RANDOLPH, JUSTICE, FOR THE COURT:

¶1. Wayne E. Ferrell, Jr., individually and d/b/a Ferrell-Hubbard Investments ("Ferrell") filed suit against River City Roofing, Inc. ("River City"); Carlisle Syntec Systems, a division of Carlisle Corporation ("Carlisle"); and putative defendants, A through M, on December 28, 2001, in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Ferrell amended his complaint naming as additional defendants Henry D. Melsheimer and Larry Montpelier, Jr. ("Montpelier") in order to more definitely provide the names of the defendants.

In both the original and amended complaint, Ferrell asserted claims of faulty workmanship and defective product under a plethora of theories, including but not limited to: (1) negligence; (2) fraud; (3) defective materials; (4) strict liability in tort; (5) breach of express and implied warranties; (6) breach of contract; (7) products liability; and (8) false representation. Specifically, Ferrell asserts that he was entitled to damages for the manufacture, installation and use of defective materials utilized to the roof of a structure located at 405 Tombigbee Street in Jackson, Mississippi.

¶2.     River City and Montpelier filed a motion for summary judgment asserting that Ferrell's claims were time barred by the statute of repose, Miss. Code Ann. § 15-1-41 (1995). Ferrell filed a response and/or objection to River City and Montpelier's motion for summary judgment asserting that his claims were not time barred because the actions of replacing or repairing the roof were not within the meaning of § 15-1-41:

> The re-roofing of the . . . building . . . was not a damage to property or personal injury that arose out of any deficiency in the design, planning, supervision, observation or construction of **AN IMPROVEMENT TO REAL PROPERTY** since the roof was not actually an improvement. It was simply a repair of the roof that had previously been on the building and it still exists on the building.

(Emphasis in original).  Additionally, Ferrell asserted that the products liability statute, Miss. Code Ann. § 11-1-63, applied because the roof is defective, and thus, § 11-1-63 invoked the "discovery rule," which set the beginning of the limitation period from the time the defect was first discovered.  Following oral arguments by the parties, the trial judge granted summary judgment in favor of River City and Montpelier and entered the judgment as final pursuant to Miss. R. Civ. P. 54(b).

¶3.     Ferrell appeals and raises the following issues, which have been restated for clarity:

2

I. Whether the trial court erred in granting summary judgment in favor of River City and Montpelier based upon the believed applicability of Miss. Code Ann. § 15-1-41.

II. Whether the products liability statute, Miss. Code Ann. § 11-1-63, applies, and renders the "discovery rule," as stated in Miss. Code Ann. § 15-1-49, applicable for the purpose of computing the correct statute of limitations period.

## FACTS

¶4. On and prior to August 11, 1993, River City installed a commercial roof on Ferrell's building located in Jackson, Mississippi, at 405 Tombigbee Street. In his complaint, Ferrell asserts that River City negligently manufactured and installed the roofing membrane, which subsequently resulted in the roof leaking water and causing property damage. Ferrell asserts that River City "promised, warranted, represented, and assured" Ferrell that the problems would be corrected.

¶5. Ferrell additionally asserted problems arose, and River City failed to honor the warranty and representation that all defects/problems would be corrected. According to Ferrell's affidavit, in December 2001, he first learned that River City, instead of replacing the roof, installed a roofing membrane structure over two previously existing roofing structures. This installation was in violation of the City of Jackson's building standards and Fire Code.

## DISCUSSION

¶6. The standard for reviewing the grant or the denial of summary judgment is the same standard employed by the trial court under Mississippi Rule of Civil Procedure 56(c). This Court conducts a de novo review when reviewing a lower court's grant or denial of summary judgment. *Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss.

3

1998). "'This entails reviewing all evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc.'" *Id.* (quoting *Townsend v. Estate of Gilbert*, 616 So. 2d 333, 335 (Miss. 1993)) (citations omitted). The trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).

¶7. Furthermore, "[a] motion for summary judgment should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim." *Id.* at 796. The trial court is prohibited from trying the issues; "**it may only determine whether there are issues to be tried**." *Id.* (citations omitted) (emphasis in original). The evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 794. If, in this view, the moving party is entitled to judgment as a matter of law, then summary judgment should be granted; otherwise, the motion for summary judgment should be denied. *Id.*

### I. Miss. Code Ann. § 15-1-41.

¶8. Miss. Code Ann. § 15-1-41 (Rev. 2003) states in pertinent part:

> No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, *arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property*, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design,

4

planning, supervision of construction or construction of such improvement to real property *more than six (6) years* after the written acceptance or *actual occupancy or use*, whichever occurs first, of such improvement by the owner thereof. This limitation shall apply to actions against persons, firms and corporations performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property for the State of Mississippi or any agency, department, institution or political subdivision thereof as well as for any private or nongovernmental entity.

This limitation *shall not apply* to any *person*, firm or corporation *in actual possession and control as owner*, *tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury*.

(Emphases added).

¶9. Ferrell asserts that the trial court erred in granting summary judgment as a matter of law because the trial court's categorization of River City's installation and subsequent repairs of the roof as an improvement to real property was a "far cry from an improvement–in fact, the property value of the building . . . has been reduced as a result of the property damage that has resulted from the water leaks from the roof." Therefore, Ferrell asserts, that there is no "improvement to real property" or at best, material issues of genuine fact exist for a jury to decide regarding whether vel non the installation and subsequent repairs are "improvements to real property" and whether vel non § 15-1-41 is even applicable because (1) a twenty-year warranty was entered into for the roof and its installation; and (2) Ferrell, the owner of the building and the roof, was in possession of the premises when the defective and unsafe condition caused injury.

¶10. River City and Montpelier respond by asserting: (1) § 15-1-41 is applicable in that their actions were an "improvement to real property;" (2) the warranty agreement was not between Ferrell and River City, but rather between Ferrell and Carlisle, and further that § 15-1-41 refers

5

to a prior written agreement providing for contribution and indemnity, none of which are present here; and (3) § 15-1-41 regarding when the limitation shall not apply does not apply to an individual in Ferrell's position.

### A. Warranty Agreement.

¶11. The relevant statute states in pertinent part that, "no action may be *brought for contribution or indemnity* for damages sustained on account of such injury *except by prior written agreement providing for such contribution or indemnity . . . .*" Miss. Code Ann. § 15-1-41 (emphases added). Here, even assuming arguendo that River City was a party to the warranty, Ferrell's complaint does not sound in contribution or indemnity. Therefore, Ferrell's argument is without merit.

### B. Section 15-1-41 Limitation.

¶12. Under these circumstances, Ferrell's assignment of error regarding the statute not applying to him, as he was in possession, is without merit.

¶13. This Court, adopting the legislative intent as to the class of persons covered by the repose statute, has reiterated and quoted the Louisiana Supreme Court's reasoning:

> We consider that there is a valid distinction between persons performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property and a person in possession or control, as owner, lessor, tenant or otherwise, of such improvement at the time of the incident giving rise to the cause of action. *After the date of registry in the mortgage office of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement to immovable property by the owner, lessor or tenant. It is difficult for the architect or contractor to guard against such occurrences because, after the acceptance by the owner, the architect or contractor ordinarily has neither control of the improvement nor the right to enter or inspect the improvement. It is thus reasonable for the legislature to have concluded that those with*

6

*access to and control of improvements to immovable property (owner, lessor and tenant) should not be accorded the protection of the pre-emptive period* established by La.R.S. 9:2772.

***Anderson v. Fred Wagner & Roy Anderson, Jr., Inc.***, 402 So. 2d 320, 323 (Miss. 1981)

(quoting ***Burmaster v. Gravity Drainage Dist. No. 2***, 366 So. 2d 1381, 1385-86 (La. 1978))

(emphasis added).  Additionally, this Court has stated:

> Section 15-1-41 was *intended by the legislature to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements.*  This section was not designed to proscribe all suits initiated ten years after completion of the defective improvement.  In enacting § 15-1-41, the legislature explicitly exempted from the statute's operation "Any person, firm or corporation in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement causes injury."  Miss. Code Ann. § 15-1-41 (Supp. 1983).
>
> In ***DeVille Furniture Co. v. Jesco, Inc.***, 423 So. 2d 1337 (Miss. 1982), this Court held that the ten year limitation of § 15-1-41 applied to an action by the owner of a building against the general contractor, several sub-contractors, and the architect who were all involved in the construction of the owner's roof. *Therefore, the section does apply in a suit by the owner against the builder.*  By express provision the section also applies in a suit by an injured third party against the builder. By express limitation however, § 15-1-41 does not apply in a suit by an injured third party against the owner.

***West End Corp. v. Royals***, 450 So. 2d 420, 424 (Miss. 1984) (emphases added).  Following

the precedent of ***Royals***, "the section *does* apply in a suit by [Ferrell] against [River City and

Montpelier]."   450 So. 2d at 424 (emphasis added).   Consequently, Ferrell's argument is

devoid of any merit.

*C.  Improvement to Real Property.*

¶14.    This Court has utilized a broad definition in determining whether an improvement to real property is an improvement of the kind contemplated by § 15-1-41.  *Smith v. Fluor Corp*., 514 So. 2d 1227, 1230 (Miss. 1987) (collecting authorities).  This Court has stated:

> The statute does not define "improvement to real property," and a definition of the phrase must follow the *plain and ordinary meaning* of the terms within the statute.  *Roberts v. Miss. Republican Party State Exec. Committee*, 465 So. 2d 1050 (Miss. 1985); *Pearl River Valley Water Supply Dist. v. Hinds County*, 445 So. 2d 1330 (Miss. 1984).
>
> Statutes analogous to MCA § 15-1-41 have been enacted in a majority of the states. Decisions construing those statutes indicate that "improvement to real property" covers a wide range of structures and/or components thereof.  *See, e.g.*: *Adair v. Koppers Co., Inc.*, 541 F. Supp. 1120 (N.D. Ohio 1982) (coal-handling conveyor was improvement); *Keeler v. Commonwealth, Dept. of Transportation*, 56 Pa. Cmwlth. 236, 424 A.2d 614 (1981) (guardrails, signs and lights on highway are improvements); *McClanahan v. American Gilsonite Co.*, 494 F. Supp. 1334 (D.C. Colo. 1980) (surge tank in oil refinery an "improvement to real property"); *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn. 1977) (furnace installed in store an "improvement"); *Reeves v. Ille Electric Co.*, 170 Mont. 104, 551 P.2d 647 (1976) (whirlpool bath in field house was improvement); *Cherokee Carpet Mills, Inc. v. Manly Jail Works, Inc*., 257 Ark. 1041, 521 S.W.2d 528 (1975) (storage tank in carpet plant an improvement).  Moreover, it is apparent that an object need not be a "fixture" to be an improvement to real property.  *Luzadder v. Despatch Oven Co.*, 651 F. Supp. 239 (W.D. Pa. 1986); *Gnall v. Illinois Water Treatment Co.*, 640 F. Supp. 815 (M.D. Pa. 1986).

*Smith*, 514 So. 2d at 1230 (emphasis added).

¶15.    An "improvement" is defined as "'[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to *more than mere repairs* or replacement of waste, costing labor or capital, and *intended to enhance* its value, beauty or utility or to adapt it for new or further purposes.'"  *Phipps v. Irby Constr. Co.*, 636 So. 2d 353, 368 (Miss. 1993) (quoting Black's Law Dictionary 682 (5th ed. 1979)) (emphases added).

8

¶16.   In *DeVille Furniture*, a state law question was certified by the Fifth Circuit in an action arising out of a building contract.  423 So. 2d 1337.  In *DeVille Furniture*, a building owner filed an action alleging that the general contractor, architect, roofing subcontractor and roof deck subcontractors had negligently designed and constructed and used and supplied improper materials in the construction of the roof on the building owner's plant.  *Id.* at 1338.  The primary complaint was that the roof was deficient in a number of respects, resulting in the leakage of water into the plant and necessitating eventual replacement of the roof.  *Id.* at 1338-39.  This Court held that § 15-1-41, rather than § 15-1-49, was applicable to the building owner's action against the general contractor, architect, roofing subcontractor and roof deck subcontractors for negligent design and construction of a roof on the building owner's commercial premises as well as alleged use of improper materials. *Id.* at 1341-42.

¶17.   Other jurisdictions have also answered the question of whether a new roof is an "improvement to real property" in the affirmative.  *See **Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.**,* 102 F.3d 1173, 1177 (11th Cir. 1997) (installation of membrane on roof held to be more than a mere repair, and therefore, constituted an "improvement to real property"); ***Merritt v. Mendel***, 690 N.W.2d 570, 573 (Minn. Ct. App. 2005) ("Common sense dictates that new roofing is an enhancement involving the expenditure of labor and money, integral to and incorporated into the structure, and designed to make the property more useful and more valuable."); ***Schuster v. Welton***, 2004 WL 1728094 (Minn. Ct. App. Aug. 3, 2004) (new roof held to be an "improvement to real property").  The installation of a new roof is clearly an "improvement to real property."

¶18.    Contrary to Ferrell's argument, although factual considerations may be involved in determining whether an article of property is an "improvement to real property," on the basis of the undisputed facts in the case sub judice, they do not constitute a genuine issue of material fact which would preclude summary judgment.  *See Smith*, 514 So. 2d at 1231.  Therefore, this issue is without merit.

¶19.    Ferrell additionally argues that the roof was not an "improvement to real property" because it was not a "valuable addition" and only a "mere repair."   Ferrell attaches two appraisals to his original complaint estimating values for three separate dates.   One appraisal performed in April 1998, before the roofing repair estimated the fee simple interest value of the land and improvements at $770,000.   The second appraisal performed following the roofing repair was conducted on April 27, 1999.   It estimated the fee simple interest value at approximately $650,000 on June 15, 1997 and April 27, 1999.

¶20.    River City responds to Ferrell's "valuable" addition argument citing *J.P.S. Elastomerics*, 102 F.3d 1173, where the Eleventh Circuit upheld the district court's grant of summary judgment in favor of a roofing manufacturer/seller. There the plaintiff contracted with the defendant in July 1984 to purchase a new roof system on a Kmart building.[1]  *Id.* at 1175.   This purchase involved the installation of a waterproof membrane over the existing surface of the old roof, and the work was completed in September 1984. *Id.* at 1175-76.

---

[1] As the defendant never installed any of the roofing membranes it manufactured/sold, it subcontracted the installation work to another company.  *J.P.S. Elastomerics*, 102 F.3d at 1175.

¶21. In *J.P.S. Elastomerics*, approximately nine years following the completion of the work, the plaintiff filed suit alleging fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligence in the design, manufacture, and installation of the roofing system. *Id.* at 1176. The defendant moved for summary judgment on the ground that the plaintiff was time-barred under Florida's statute of limitations governing construction and improvements to real property, which is very similar to Miss. Code Ann. § 15-1-41. *Id.* The Eleventh Circuit noted that the Florida statute in question did not contain a definition of an "improvement," but that the Florida Supreme Court has defined it as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to *more than mere repairs* or replacement of waste, costing labor or capital, and *intended to enhance* its value, beauty or utility or to adapt it for new or further purposes."[2] *Id.* at 1177. Following the district court's grant of summary judgment to the defendant, the Eleventh Circuit affirmed, holding that the replacement of a new roofing membrane was more than a "mere repair," and therefore, qualified as an "improvement" under the Florida statute:

> Schoninger did not hire JPS because the Kmart roof needed immediate repair; Schoninger hired JPS to attach to the Kmart building an entirely new, ostensibly durable covering. Howard Schoninger stated as much when he identified his reason for hiring JPS: "I knew I would need a roof eventually." The installation of over 100,000 square feet of membrane and fiberboard at a cost of tens of thousands of dollars is a "valuable addition" to the Kmart building, and it therefore qualifies as an "improvement."

*Id.*

---

[2] This definition is cited by Ferrell and referenced by this Court in *Phipps*, 636 So. 2d at 368 (quoting Black's Law Dictionary 682 (5th ed. 1979)).

¶22.    In the case sub judice, River City makes a compelling argument:

> Paralleling ***J.P.S. Elastomerics***, in the matter at bar, Ferrell contends that his new roof was merely a repair.  However, it is apparent that it was not imperative for Ferrell to install a new roof on his building since he received the proposal from [River City on] June 17, 1993; accepted [River City's] proposal on July 15, 1993; the installation of the new roof was not completed until August 13, 1993; and the work was not accepted/paid for by Ferrell until August 26, 1993.  If installing a new roof on Ferrell's building was an immediate repair, Ferrell would not have allowed nearly two months to pass before completion. Therefore, since Ferrell received a new roofing system and expended thousands of dollars, the subject new roof is a "valuable addition" to Ferrell's building and is thus, an "improvement."

> Moreover, it would be against public policy to allow the Plaintiff to claim that installing a new roof is not an "improvement to real property" because of purported poor workmanship, thereby not falling within the realm of the repose statute.  To permit the Plaintiff to do this, completely negates the use and purpose of the repose statute.

One cannot validly argue that at the time of completion, the roof was not a valuable addition amounting to more than a mere repair, which was intended to enhance the value of Ferrell's building.  Accordingly, Ferrell's argument is without merit.

### D.  Adequate Proof?

¶23.    Ferrell now asserts that River City and Montpelier failed to show that they are the "entities that were responsible for the designing, planning, supervising, observing of construction, or construction of the re-roofing and, as a result thereof, are not protected by Section 15-1-41."   However, Ferrell alleged that River City and Montpelier were responsible for same throughout his complaint and has not offered any proof that negates River City and Montpelier's status of installers and builders of commercial roofs.   As such, River City and Montpelier are protected by § 15-1-41, and this issue is devoid of any merit.

### E.  Fraud.

12

¶24. Ferrell's argument that River City "fraudulently concealed from the Plaintiff the facts that, instead of re-roofing the building at 405 Tombigbee Street, Jackson, Mississippi and repair of the roof, [River City] violated the laws of the City of Jackson and the State of Mississippi by installing a third illegal roof or membrane over the original roof and one existing membrane" is without merit. Ferrell fails to cite any authority to support his proposition that River City is not entitled to the protection of § 15-1-41 because of River City's concealment of facts. *See Williams v. State*, 708 So. 2d 1358, 1362-63 (Miss. 1998) (failure to cite relevant authority obviates the appellate court's obligation to review such issues).

¶25. Alternatively, Ferrell's assertion is without merit because River City submitted its proposal to Ferrell to install a new roof on Ferrell's building on June 17, 1993, which clearly stated that River City would "[o]verlay existing EPDM roof with a new Carlisle EPDM ballasted system." Ferrell accepted this proposal by the July 15, 1993, acceptance letter from Dale Hubbard on behalf of Ferrell and Hubbard. Subsequently, Ferrell paid for the invoice for the work. As such, there are no facts to support Ferrell's argument regarding fraud. *See In re Estate of Law*, 869 So. 2d 1027, 1029 (Miss. 2004) (To prove fraud, the plaintiff is required to show by clear and convincing evidence: (1) a representation, (2) that is false, (3) that is material, (4) that the speaker knew was false or was ignorant of the truth, (5) the speaker's intent that the listener act on the representation in the manner reasonably contemplated, (6) the listener's ignorance of the statement's falsity, (7) the listener's reliance on the statement as true, (8) the listener's right to rely on the statement, and (9) the listener's proximate injury as a consequence.); *Otts Fin. Co. v. Myers*, 169 Miss. 407, 152 So. 834, 835 (1934) ("There

13

is no sounder doctrine of law established in our courts than that he who alleges fraud must state the facts upon which the fraud is based, and prove them.").

## II. Miss. Code Ann. § 11-1-63.

¶26.    Ferrell asserts that the products liability statute in effect as to this case, Miss. Code Ann. § 11-1-63 (Rev. 2002), applies instead of Miss. Code Ann. § 15-1-41, and consequently renders the "discovery rule" as stated in Miss. Code Ann. § 15-1-49 (Rev. 2003) applicable for the purposes of computing the correct statute of limitations.[3]    In other words, Ferrell asserts that this is a products liability action and the applicable statute of limitations is the general three-year-statute of limitations that began to run when he "knew, should have known, or discovered the defects in the materials and workmanship."    As such, Ferrell asserts that the grant of summary judgment to River City and Montpelier was inappropriate since this suit was filed within three years from the date he discovered such defects.

¶27.    Miss. Code Ann. § 15-1-49 (Rev. 2003) states:

---

[3] Ferrell additionally asserts that summary judgment was inappropriately granted, as evidenced by a similar pending case in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Ferrell asserts that the defendants in the case sub judice are involved in that the pending case, and that the circuit court denied a motion for summary judgment based on the same issues presented in this appeal. As such, Ferrell asserts that this Court should reverse the summary judgment in the case sub judice in order to be consistent with the trial court's ruling. However, although Ferrell states the case style in his appellate brief, no copy of the pending case is included in the record, Ferrell does not point us to any part of the record to support his assertion, and Ferrell cites no authority to support his position. Thus, this Court declines to review such bare allegations contained in his brief, which are not supported by the record on appellate review. *See **Williams***, 708 So. 2d at 1362-63 (failure to cite relevant authority obviates the appellate court's obligation to review such issues); ***Vinson v. Johnson***, 493 So. 2d 947, 950 (Miss. 1986) (this Court will not review any allegation of error which is unsupported by the record.)

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

¶28.    In *Moore v. Jesco, Inc.*, 531 So. 2d 815, 817 (Miss. 1988), this Court held that an "improvement to real property" is not a "product," and therefore, "an action based on strict products liability will not lie." *See also* *Wolfe v. Dal-Tile Corp.*, 876 F. Supp. 116, 118 (S.D. Miss. 1995) (citing *Moore*, 531 So. 2d at 817, and reiterating this Court holding that "strict products liability claims cannot lie against persons supplying 'improvements to real property' as opposed to products."). In *Moore*, the plaintiffs alleged that chicken houses constructed by the defendant were defective in their design, manufacture, materials, warnings and construction. 531 So. 2d at 816. The plaintiffs' suit was based on alternative theories of negligence, strict liability in tort, breach of contract and breach of warranties. *Id.* This Court affirmed the trial court's grant of summary judgment to the defendant: "Based on our analysis in *Smith* [514 So. 2d 1227], we hold that the component parts of the subject chicken houses constitute "improvements to real property" and not "products[.]" As a matter of law, then, an action based on strict products liability will not lie and summary judgment was properly granted." *Moore*, 531 So. 2d at 817.

¶29.    This issue is without merit.

**CONCLUSION**

15

¶30. For these reasons, the learned trial judge did not err when he granted summary judgment in favor of River City and Montpelier; therefore, the judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, is affirmed.

¶31. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**