LAMAR, Justice,
for the Court:
¶ 1. This case involves a residence that the plaintiff homeowners allege contains “major structural defects.” After discovering these defects and notifying the builder, the parties entered a “tolling agreement” to toll the applicable limitations period, so they could “engage in a review and analysis of the structural settlement issues to determine an agreed upon repair.” After the builder refused to correct the defects, the plaintiffs filed suit averring breach of the New Home Warranty Act (NHWA); breach of the implied warranty of merchantability and fitness for a particular purpose; implied warranty of construction performed in a workmanlike manner; negligence; and fraud/mis *1049 representation/and/or omission of fact. In response, the defendant builder asserted the claims were time-barred and that the tolling agreement was void. This appeal arises from the trial court’s grant of summary judgment in favor of the defendant.
Facts and Procedural History
¶ 2. Dolph and Dinette Baker contracted with Rusty Ellis, Builder, Inc. (REB), to build the Jackson residence at issue in this case. The Bakers began occupying the house on January 4, 1999.[1] Andrew and Jan Townes purchased the residence from the Bakers on January 19, 2003.
¶ 3. By certified letter dated September 1, 2004, the Towneses informed REB of structural defects and attached an engineering report from a firm that had inspected the residence. In that letter, the Towneses also requested that REB inspect the residence and repair the defects. REB inspected the residence, but the parties dispute whether REB recommended remedial measures and whether it promised to repair the defects.
¶ 4. However, it is undisputed that REB also signed a “tolling agreement” which provided in relevant part:
[Subsequent to the Townes purchase and occupation of the Residence, defects in the construction of the Residence have manifested themselves in the form of slab cracks, sinking floors, cracked walls, brick veneer cracks, mortar separation and crooked door frames; and WHEREAS, the Townes and Ellis wish to engage in a review and analysis of the structural settlement issues in order to determine an agreed upon repair. The Townes and Ellis hope to avoid the immediate need of the filing of a lawsuit by the Townes against Ellis and possibly others. Therefore ... the Townes and Ellis hereby toll all applicable statute of limitations with respect to the filing of any claim or cause of action which the Townes may have against Ellis and others under Mississippi state law including, but not limited to, the New Home Warranty Act, Mississippi Code Annotated 83-58-1, et seq.:
1. All applicable statute of limitations or other similar time periods (including, but not limited to all applicable statute of repose or the doctrine of lach-es) with respect to any claim by the Townes against Ellis ... arising out of or related to Ellis’s work on the Residence are hereby deemed conclusively tolled for a period (the “Tolling Period”) commencing October 25, 200), as if the Townes had commenced an action or proceeding or otherwise taken any action necessary to toll any such statute of limitations or other similar time period or doctrines on that date. The parties agree that such Tolling Period shall continue through the Effective Date of Terminations as defined in paragraph 2 below.
2. A party may terminate the Tolling Period by serving on all other parties, by hand delivery or by certified mail, return receipt requested, written notice of termination. The Effective Date of Termination shall be thirty (30) days following the date on which each of the other parties have received such written notice....
3. The parties hereto agree that the purpose of this Tolling Agreement is to toll as statutes of limitations or other *1050 similar time period under all applicable law and other legal doctrines during the Tolling Period and that no calendar day or other time period in the Tolling Period shall be counted or considered for purposes of any applicable statute of limitations or other similar time period or other similar doctrines or statutes of repose. The parties also agree that they will not assert, as a defense or otherwise, that any claim by the Townes against Ellis and others is bamd by any applicable statute of limitations or other similar time period or related doctrines, based upon a calculation which includes any day or days within the Tolling Period.
While the agreement is undated, REB made a correction to its name on the contract, initialed the change, and dated the change January 5, 2005. The Towneses assert REB signed the contract January 5, 2005, but contend the parties orally agreed to toll the statute of limitations December 13, 2004. REB does not dispute it orally agreed to toll the statute of limitations, and has conceded that the Towneses presented the Tolling Agreement to REB in late 2004 and that it was signed in January 2005.
¶ 5. After REB refused to make repairs, the Towneses filed suit on July 10, 2008. The Towneses averred breach of NHWA; breach of the implied warranties of merchantability and fitness for a particular purpose; breach of implied warranty of construction performed in a workmanlike manner; negligence; and fraud, misrepresentation, and/or omission of fact. In its answer, REB averred all claims were barred by the applicable statute of limitations and/or repose, and that the tolling agreement was void under Mississippi law. Thereafter, REB moved for summary judgment, contending: (1) all claims were time-barred under the six-year statute of repose in Mississippi Code Section 15-1-41; which governs construction defects; (2) even if other limitations applied, all claims still were time-barred; and (3) the tolling agreement was void under Mississippi Code Section 15-1-5, which prevents parties from “changing in any way whatsoever by contract” the limitations period. See Miss.Code Ann. § 15-1-5 (Rev.2003).
¶ 6. In response, the Towneses argued the Tolling Agreement was valid because it did not shorten, but extended, the applicable limitations. The Towneses also argued that Section 15-1-5 does not apply to causes of action under Mississippi Code Section 83-58-1, a provision of the NHWA. See Miss.Code Ann. § 83-58-1 (Rev.2011). Last, the Towneses argued that equitable tolling or fraudulent concealment applied if the Tolling Agreement did not, since they had relied on REB’s alleged misrepresentations of repair.
¶ 7. After considering the parties’ arguments, the trial court granted REB’s motion for summary judgment. The trial court made no findings of fact or conclusions of law.
Discussion
¶ 8. The application of the statute of limitations is a question of law and requires de novo review.[2] However, this Court has held that the issue of whether a suit is time-barred may involve questions of fact for the jury to decide.[3]
¶ 9. This Court reviews de novo a grant or denial of summary judgment.[4]
*1051 Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.”[5] If the moving party supports its motion as provided by Rule 56, the nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial.” [6]
I. Whether Mississippi Code Section 15-1-5 bars all claims asserted by the Towneses, including claims under the New Home Warranty Act.
¶ 10. Mississippi Code Section 15-1-5 provides that:
[t]he limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.[7]
And Section 83-58-5 provides that “every builder warrants ... [s]ix (6) years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.”[8] The warranty commencement date is the “date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first.”[9]
¶ 11. The Towneses argue that the Tolling Agreement extends or suspends all limitations periods applicable to this case. Alternatively, the Towneses argue that Section 15-1-5, by its own terms, applies only to the limitations periods set forth in Chapter 1, Title 15 of the Code. Thus, the Towneses argue that Section 15-1-5’s prohibition of modifying the limitations period by contract does not apply to the NHWA claims under Section 88-58-5.
¶ 12. Conversely, REB argues that all claims, even the NHWA claims, fall under Section 15-1-41, which governs construction defects. Section 15-1^11 provides that:
[n]o action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of any improvement to real property ... more than six years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.[10]
REB points to the language “[n]o action” and argues it includes actions arising under Section 83-58-5. REB also argues that this Court has found that contract, warranty, and tort claims fall under Section 15-1-41; thus Section 15-1-41 governs the NHWA claims.[11]
*1052 ¶ 13. We agree that all of the Towneses’ common-law claims fall under Section 15-1^41 and are time-barred.[12] Furthermore, Section 15-1-5 prohibits the limitations period from being “changed in any way whatsoever by contract.”[13] Because the Tolling Agreement is a contract that changes the six-year statute of repose under Section 15 — 1—41, all claims falling under that statute are time-barred.
¶ 14. As previously noted, REB argues that Section 15-1-41 also applies to the NHWA claims. Section 15-1-41 and Section 83-58-5 arguably both apply to the alleged structural defects at issue in this case. However, this Court has ruled that:
statutes which deal with the same subject matter, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other so as to give force and effect to each, and ... where a general statute, if standing alone, would include the same subject matter as a special statute, the special statute will ordinarily be regarded as a qualification of the general statute.[14]
¶ 15. Here, the Towneses specifically pleaded a cause of action for breach of the NHWA, alleging that REB provided defective work in constructing the structural systems due to noncomplianee with applicable building codes and ordinances. Section 83-58-5 specifically covers structural defects resulting from noncomplianee with building standards, and consequently, its six-year limitations period applies over the more general Section 15-1-41. Thus, we find that the Towneses’ claims that fall under the NHWA are not subject to Section 15-1-5, as the plain terms of that statute apply only to limitations periods “prescribed in this chapter,” i.e., Chapter 1, Title 15.
II. Whether the Tolling Agreement is enforceable for the NHWA claims.
¶ 16. The Towneses assert that the validity of a tolling agreement, outside the context of Section 15-1-5, is a matter of first impression for the Court. The Towneses cite numerous cases from other jurisdictions enforcing such agreements and argue that this Court should recognize the validity of such agreements. Alternatively, the Towneses argue the Tolling Agreement is valid under Mississippi case-law recognizing agreements that define when a cause of action accrues.[15] The Towneses argue that, under the NHWA, they were required to give notice of the defects and allow REB a reasonable opportunity to repair them; thus, the Tolling Agreement enforced those statutory conditions precedent that were necessary for the claims to accrue.
¶ 17. REB counters that the Tolling Agreement is void and unenforceable as a matter of public policy. It argues that the Tolling Agreement undermines the purpose of limitations periods, which is to prevent the “assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production *1053 because of the lapse of time.”[16] Lastly, REB argues that the Tolling Agreement does not define an accrual period, but is an attempt to extend the statute of limitations after claims have accrued.
¶ 18. We first reject the Towneses’ argument that the Tolling Agreement defines when their NHWA claims accrue as opposed to modifying the statute of limitations. While the Tolling Agreement parallels certain conditions precedent[17] found in the NHWA, those conditions do not affect the existence of the cause of action. Furthermore, claims under the NHWA do not “accrue,” as the six-year warranty period is akin to a statute of repose. A statute of repose “ ‘cuts off the right of action after a specified period of time measured from the delivery of a product or the completion of work. [Statutes of repose] do so regardless of the time of accrual of the cause of action or of notice of the invasion of a legal right.’ ”[18] Here, the Towneses had six years[19] following the date the home was first occupied[20] to file suit based on major structural defects covered by the NHWA.[21] Because the residence was first occupied (by the Bakers) on January 4, 1999, the Towneses’ July 2008 NHWA claims are time-barred unless the Court enforces the Tolling Agreement.
¶ 19. This Court has yet to address the general validity of an agreement between parties to toll a statute of limitations or repose. However, in Crane v. French, this Court struck down an agreement not to plead the statute of limitations indefinitely.[22] In Crane, a debtor promised that “the Statute of Limitations should not run on said note, until it should be fully paid” and “relying on said promise” the plaintiff did not file suit within the limitations period.[23] The Court considered whether the agreement was “regarded as a new promise to pay the debt” in which a new six-year statute of limitations began to run[24] or whether it was “an independent and collateral agreement not to plead” the statute of limitations as a defense “in all time to come” and thus void as against public policy[25] The Court found that it was the latter and void as a “violation of public policy; that policy which requires suits to *1054 be brought in due season, and discourages stale demands.”[26]
¶ 20. Notably, the Court in Crane did not foreclose all tolling agreements. It held only that a party could not waive by agreement the statute of limitations for an indefinite time period.[27] The Court also noted that the agreement was formed before the cause of action had accrued on the original debt.[28] The Court further noted that the debtor agreed to waive the statute of limitations at the same time he made the promise to pay the debt.[29] But the Crane Court left open whether we would enforce an otherwise valid tolling agreement.
¶ 21. However, this Court’s analysis in other cases suggests that we would enforce a tolling agreement. In discussing whether a defendant could be equitably estopped from pleading the statute of limitations, the Court in Izard v. Mikell quoted with approval the following rule:
[T]he great weight of authority supports the rule that an agreement or promise, whether oral or written ... not to plead the statute of limitations made before the expiration of the statutory period, and relied upon ... until after the statutory period has expired, operates as an estoppel ..., and precludes him from interposing the defense of the statute.[30]
And in Mississippi Department of Public Safety v. Stringer, another case in which the Court discussed equitable estoppel and the statute of limitations, we noted that “[although settlement negotiations were ongoing between the parties, there was never any representation by the Appellants that the statute of limitations was tolled.”[31] These statements support upholding a valid tolling agreement.
¶ 22. Furthermore, the Towneses are correct that other jurisdictions recognize tolling agreements. According to one source, “contractual modification of statute of limitations ... is ordinarily permitted, and is valid and enforceable unless unreasonable, or based on fraud or unequal bargaining positions.”[32] However, such agreements are not enforceable if prohibited by statute or by public policy.[33] And there is “considerable conflict of authority upon the validity” of such agreements depending upon:
the time when such contractual agreement was executed, that is, whether before, at, or after the creation of the obligation, or the inception of liability, or before or after the accrual or the bar of the cause of action, and the length of the period for which the statute is waived, that is, whether for an indefinite or unlimited period or for a definite or limited period.[34]
¶ 23. We find that Crane, Izard, and Stringer provide five factors, which are also found in the “considerable conflict of authority” from other jurisdictions, that determine whether a tolling agreement is enforceable in this state. A tolling agreement may be enforceable if: (1) it is not prohibited by statute; (2) it *1055 contains a definite and reasonable time period; (3) it is formed after the cause of action has accrued, or in the instance of a statute of repose, after the plaintiff has notice of the cause of action; (4) it is not made at the same time as, or part of, the obligation sued upon; and (5) it is entered into before the expiration of the applicable limitations period. In applying these rules to the tolling agreement at hand, we find it is unenforceable. While the agreement provides a date when the tolling should begin (October 25, 2004), it provides no end date. Thus, the agreement provides no time limitation and is indefinite and therefore void.
III. Whether REB is prohibited from relying on the applicable time bars under the doctrine of equitable estoppel or fraudulent concealment.
¶ 24. The Towneses argue that, even without the tolling agreement, REB cannot assert any time bar based on the doctrines of equitable estoppel and fraudulent concealment. The Towneses argue that they relied on REB’s promises to repair the residence, in addition to its agreement not to raise the statute of limitations or repose as a defense. The Towneses assert that REB’s conduct caused their claims to be time-barred.
¶ 25. Conversely, REB argues that the Towneses cannot rely on equitable estop-pel to enforce an unenforceable agreement. REB also argues that the Towneses knew of their claims by September 1, 2004, when they sent REB notice; thus they should have timely filed suit while pursuing settlement options.
¶ 26. While it is true the Court will not enforce a void contract,[35] the Court may still look at REB’s conduct in order to determine whether equitable es-toppel applies.[36] The Court will not apply equitable estoppel to prevent a time bar where good-faith settlement negotiations are the only evidence submitted by the plaintiff. Rather, the plaintiff must present proof of inequitable conduct by the defendants.[37] Specifically, the plaintiff must show by a preponderance of evidence that “(1) it was induced by the conduct[38] of [the defendant] not to file its complaint sooner, (2) resulting in its claim being barred by the [applicable] limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow.” [39] And “[c]oncerning the application of equitable estoppel, ‘[the] issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.’ ”[40]
*1056 ¶27. Here, the Towneses assert that REB inspected the property, suggested certain remedial measures, and promised to make the repairs, all of which go beyond mere settlement negotiations. Conversely, REB contends it never promised to make any repairs. Thus, we find that genuine issues of material fact exist as to whether: (1) REB promised to make the repairs; (2) whether the Towneses reasonably relied on REB’s promises; and (8) whether the Towneses acted diligently in filing their complaint upon realizing REB would not make the (allegedly) promised repairs. Because genuine issues of material fact exist as to the application of equitable estoppel, we reverse the grant of summary judgment as to all claims and remand for further proceedings.
¶ 28. To prevail under a claim of fraudulent concealment, the plaintiff must show (1) an affirmative act or conduct by the defendant done to prevent discovery of a claim; and (2) due diligence by the plaintiff to discover it.[41] Whether a plaintiff acted diligently in discovering fraud is generally a jury question.[42] The Towneses’ claim is that REB violated Chapter 15 and the New Home Warranty Act because their home, which REB constructed, had major structural defects within six years of it first being occupied. The Towneses admittedly knew of the defects by September 1, 2004. Therefore, we find the Towneses’ fraudulent-concealment allegations to be without merit.
Conclusion
¶29. While Mississippi Code Section 15-1-5 prevents the Tolling Agreement from operating as to the Towneses’ common-law claims, we recognize the validity of agreements to toll statutes of limitation and statutes of repose not prohibited by that statute, such as the statute of repose in the New Home Warranty Act. However, we find this Tolling Agreement is void as to its application to the New Home Warranty Act claims, since it contains no time limitation and is indefinite in application. Notwithstanding these findings, we reverse the trial court’s grant of summary judgment, as genuine issues of material fact exist as to whether REB should be equitably estopped from asserting the statutes of repose as to all the Towneses’ claims. We remand the case to the Circuit Court of Hinds County for further action consistent with this opinion.
¶ 30. REVERSED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., AND PIERCE, J., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY CHANDLER, J. CHANDLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J. KING, J., NOT PARTICIPATING.

. The plaintiffs assert that the date the Bakers occupied the residence is genuinely disputed. However, the plaintiffs failed to provide evidence in response to or in rebuttal of a letter dated June 7, 1999, from the Bakers to REB, in which the Bakers state they moved into the house January 4, 1999. In the letter, the Bakers complained of various problems with the house and were upset with several invoices received after closing.

. Windham v. Lateo of Miss., Inc., 972 So.2d 608, 610 (Miss.2008).

. Smith v. Sanders, 485 So.2d 1051, 1053 (Miss. 1986).

. Id.

. Miss. R. Civ. P. 56(c).

. Miss. R. Civ. P. 56(e).

. Miss.Code Ann. § 15-1-5 (Rev.2003) (emphasis added).

. Miss.Code Ann. § 83-58-5(1)(b) (Rev.2011).

. Miss.Code Ann. § 83-58-3(g) (Rev.2011).

. Miss.Code Ann. § 15-1-41 (Rev.2003).

. See generally Reich v. Jesco, Inc., 526 So.2d 550, 553 (Miss.1988) (ruling that Section 15-1-41 is not limited to tort claims but also includes contract and warranty claims).

. See id. The Towneses filed their complaint on July 10, 2008, more than six years after the home was first occupied on June 4, 1999.

. Miss.Code Ann. § 15-1-5 (Rev.2003).

. McCullen v. State ex rel. Alexander, 217 Miss. 256, 63 So.2d 856, 859 (1953).

.See Anderson v. Lancaster, 215 Miss. 179, 183, 60 So.2d 595, 597 (1952) (ruling that "parties may agree as to the due date of an open account, as they may to any other obligation, and that the statute of limitations does not begin to run until the accrual or due date of the debt”).

. Miss. Dep’t of Pub. Safety v. Stringer, 748 So.2d 662, 665 (Miss. 1999).

. The NHWA provides that, before "instituting any action under Section 83-58-17, the owner shall give the builder written notice within ninety (90) days after knowledge of the defect by registered or certified mail, advising him of the defects and giving the builder a reasonable opportunity to repair the defect.” Miss.Code Ann. § 83-58-7 (Rev.2011).

. Windham v. Latco of Miss., Inc., 972 So.2d 608, 611 (Miss.2008) (emphasis added) (quoting Evans v. Boyle Flying Serv., Inc., 680 So.2d 821, 827 n. 4 (Miss.1996)).

. The Act provides for an additional thirty days to file suit "after the expiration of” the six-year warranty period. Miss.Code Ann. § 83-58-9 (Rev.2011).

. The warranty commencement date is the "date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first.” Miss. Code Ann. § 83-58-3(g) (Rev.2011) (emphasis added). Here, REB concedes the date of commencement should be when the home was first occupied.

. Miss.Code Ann. §§ 83-58-5(1)(b), 83-58-3(g) (Rev.2011).

. Crane v. French, 38 Miss. 503 (1860).

. Id. at 16.

. See also Bowmar v. Peine, 64 Miss. 99, 8 So. 166 (1886) (holding that an express waiver of the statute of limitations on a note was a new promise to revive a debt from which the statute of limitations ran).

. Id.

. Id. at 21.

. Id. at 20-22.

. Id. at 16.

. Id.

. Izard v. Mikell, 173 Miss. 770, 163 So. 498, 499 (1935).

. Miss. Dep't of Pub. Safety v. Stringer, 748 So.2d 662, 667 (Miss. 1999).

. 51 Am.Jur.2d Limitation of Actions § 79 (2011).

. Id.

. 1 A.L.R.2d 1447(1948).

. See Price v. Purdue Pharma Co., 920 So.2d 479, 484-85 (Miss.2006).

. Windham v. Latco of Miss., Inc., 972 So.2d 608, 611-12 (Miss.2008) (holding that equitable estoppel and fraudulent concealment apply to prevent a defendant from relying on time bar under statute of repose).

. Miss. Dep’t of Pub. Safety v. Stringer, 748 So.2d 662, 666-67 (Miss. 1999).

. This Court also has used the term "representation” instead "of conduct,” or at times, we have used both terms. Windham v. Latco of Miss., Inc., 972 So.2d 608, 611-12 (Miss. 2008). However, the Towneses cannot rely on any verbal assertions of REB not to raise the statute of limitations, as that essentially would be enforcing the Tolling Agreement in derogation of Section 15-1-5.

. Harrison Enters., Inc. d/b/a Paulding Cable Co. v. Trilogy Commons, Inc., 818 So.2d 1088, 1095 (Miss.2002).

. Trosclair v. Miss. Dep’t of Transp., 757 So.2d 178, 181 (Miss.2000) (quoting Stringer, 748 So.2d at 668 (Banks, J., dissenting)).

. Windham, 972 So.2d at 614 n. 8.

. Id. at 612.